## McCullough, Executor, v. Ferman, Attorney-in-Fact.

*Oil lease — Lease — Royalties—Personal property—Real estate—Donatio mortis.*

1. Where a man in his lifetime and his co-owner lease jointly owned land for oil, and after his death intestate, his widow and heirs at law join in leasing additional land for the same purpose, and agree that all of the royalties shall be distributed, etc., share and share alike among the widow and heirs, and such royalties are so distributed for many years, the transaction works a legal conversion of the status of the oil from land to personal property as far as the widow and heirs are concerned, and this is the case whether the royalties were distributed as oil or money.

2. In such case, if it appears that the widow on her deathbed, with knowledge that she was about to die, and in the presence of members of her family called by her, stated that she wished a daughter named to have her share in the royalties, such daughter takes her mother's share as personal property.

Case stated. C. P. Jefferson Co., Oct. T., 1923, No. 79.

*H. B. McCullough,* in person, for plaintiff; *Brown & Means,* for defendant.

CORBET, P. J., Jan. 18, 1924.—Alonzo Ferman died intestate Nov. 7, 1895. In his lifetime, being the owner of an undivided one-half interest in certain oil and gas underlying approximately 1032 acres of land, situated in Elk

County, Pennsylvania, he joined with his co-owner in leasing a portion of it to the National Transit Company, which, under the provisions of the lease, drilled certain productive oil wells, from which oil was, and ever since has been, produced in paying quantities. Said Alonzo Ferman left surviving him as his heirs-at-law a widow, Susannah Ferman, and seven children, A. J. Ferman, Eliza Ferman, S. B. Ferman, Clara Horton, Josephine Dailey, Nellie Iddings and Zadie McNeil.

After the death of the decedent, Alonzo Ferman, his surviving heirs-at-law, by virtue of a letter of attorney duly executed by them to his son, S. B. Ferman, joined in a lease or leases of another portion of said oil and gas property to Hazelwood Oil Company and one Thomas Kennedy, who, under the provisions of such lease or leases, likewise drilled certain wells which proved productive and are yet producing oil in paying quantities; their product being now owned or controlled by Wilburine Pipe Lines.

Further than taking out letters of administration and filing an inventory and appraisement, there was no formal administration of the estate of the decedent, Alonzo Ferman. But his widow and heirs-at-law entered into a parol agreement among themselves that the widow, Susannah Ferman, in lieu of her interest in the estate left by her husband, should receive one-eighth of all royalties received from the wells hereinbefore referred to, and that the remaining seven-eighths should be divided in equal proportions among the surviving children of said decedent, which was done until the death of the widow.

Said Clara Horton, daughter, as aforesaid, of said Alonzo Ferman, died intestate on Dec. 15, 1895, and her interest in her father's estate is now vested in Charlotte Horton, a minor, who has for her guardian (appointed by the Orphans' Court of Elk County) Ella A. Horton.

On April 19, 1896, Susannah Ferman, the widow, died intestate, leaving to survive as her heirs-at-law all of the remaining children named in a preceding paragraph, and the heir of her deceased daughter, Clara Horton.

When the said Susannah Ferman, widow of Alonzo, as aforesaid, was on her death-bed and aware she was about to die, she called several of the members of her family to her and stated to them that, after her death, she wanted her one-eighth share in said royalties to go to her invalid daughter, said Eliza Ferman.

On Nov. 3, 1913, the heirs-at-law of Alonzo Ferman, named in the 5th paragraph of the case stated, executed and delivered to National Transit Company and J. H. Ferman, the present defendant, a letter of attorney, constituting J. H. Ferman their attorney-in-fact, (1) "to sell, transfer and renew oil acceptances and certificates; (2) to sell oil standing to credit of A. J. Ferman et al. on 'transit company's' books, and to draw and transfer orders for oil;" (3) "to execute orders for division and assignment of well interests," and empowering him "to transact all business pertaining to the foregoing or arising out of the same until further written notice."

On July 1, 1917, the heirs also executed and delivered to said J. H. Ferman and Wilburine Pipe Lines an instrument in writing of that date as follows, viz.: "The undersigned hereby certify and agree that they are all of the heirs of Alonzo Ferman, deceased, and are entitled to receive the oil royalty from the Alonzo Ferman estate, and hereby authorize the Wilburine Pipe Lines to make payment for all oil from said royalty to J. H. Ferman until notified to the contrary."

From time to time, after the execution and delivery of the letters of attorney mentioned, said J. H. Ferman, defendant, collected and received from

said National Transit Company and Wilburine Pipe Lines certain royalties, and, after the deduction of proper expenses and commission, distributed the same among the several parties entitled thereto, paying to the said Eliza Ferman two-eighths or one-fourth thereof; so that from the death of the mother, Susannah Ferman, until the death of her daughter, Eliza Ferman, which occurred on June 8, 1922, a period of a little more than twenty-six years, said Eliza Ferman, upon the distribution of such royalties, received, as her own, two-eighths or one-fourth of the same; that is, one-eighth in her own original right and the one-eighth acquired from her mother.

Said Eliza Ferman died testate on said June 8, 1922, having by her last will and testament, dated March 22, 1921, duly filed, proven and recorded, constituted and appointed said H. B. McCullough to be executor, and, *inter alia*, made the following bequest, to wit:

"Fifth. To my niece, Josephine McNeil, I give and bequeath the income as royalty from my oil properties (with deduction of whatever money is needed to cover the expense of the administration of my estate), which includes my own and my mother's share. I direct, however, that my executor shall collect the same and hold or invest it in such securities as he may select, until my niece reaches the age of twenty-one years, when the amount shall be paid over to her."

For the period beginning June 1, 1922, and ending Jan. 31, 1923, said J. H. Ferman, the defendant, as attorney-in-fact as aforesaid, collected and received from the National Transit Company and Wilburine Pipe Lines, as and for royalties for oil due the heirs-at-law of said Alonzo Ferman, after deduction of his commission and taxes paid for the year 1922, a net balance for distribution of $982.31.

The plaintiff, executor of the will of Eliza Ferman, claims of the defendant, as due her estate from the said $982.31, the one-fourth part thereof, or the sum of $245.58, being two shares of one-eighth each of the original eight shares hereinbefore mentioned, namely, Eliza Ferman's own share and that of her mother, which the latter gave her. The defendant acknowledges his indebtedness to the plaintiff for the sum of $140.33, being the one-seventh part of the $982.31, on the ground that the mother's death reduced the division to seven parts, in which the seven children would share equally the mother's original portion, and that Eliza Ferman was not entitled to the whole of the mother's share.

If the court be of opinion that Eliza Ferman acquired the mother's one-eighth interest in addition to her own original one-eighth, then judgment is to be entered in favor of the plaintiff against the defendant for the sum of $245.58. If, however, the court be of opinion that, on the death of the mother, Eliza's share was increased only by the one-seventh part of the mother's share, thereby entitling Eliza to one-seventh part of the whole only, then judgment to be entered in favor of the plaintiff against defendant for $140.33. In either case, the costs shall follow the judgment. Both plaintiff and defendant reserved the right to appeal.

The argument on each side was based almost entirely on the theory that the mother's interest must be dealt with as though it were an interest in land. We take a different view of it.

It is not questioned that the widow's interest as fixed by the parol agreement entered into by her and the children, whatever the interest was, became as absolutely hers to dispose of in any manner she saw fit as did the several interests of the children become absolutely theirs respectively to dispose of in like manner. No child's right to and in an interest was superior in any

respect to the right and dominion of the widowed mother in and over her interest.

Alonzo Ferman joined in a lease in his lifetime, and, after his death, his heirs-at-law joined in a lease or leases. The consideration to be received by the lessors (no down-payment of anything at the making of the lease being mentioned) is not with clearness and definitely set forth in the case stated. In the letter of attorney mentioned in the 5th paragraph appears a reference to "oil standing to credit of A. J. Ferman et al. on your (National Transit Company) books." The instrument referred to in paragraph 6 informed the Wilburine Pipe Lines that the signers were "all of the heirs of Alonzo Ferman, deceased, and are entitled to receive the oil royalty from the Alonzo Ferman estate," and thereby authorized "the Wilburine Pipe Lines to make payment for all oil from said royalty to J. H. Ferman until notified to the contrary." It is said in the 7th paragraph: "From time to time, after the execution and delivery of the letters of attorney recited in the . . . fifth and sixth paragraphs, . . . the said J. H. Ferman . . . collected and received from National Transit Company and Wilburine Pipe Lines certain royalties and . . . distributed the same among the several parties entitled thereto, paying to the said Eliza Ferman . . . two-eighths or one-fourth thereof." In paragraph 8 it is said: "She, the said widow, should receive one-eighth of all royalties received from the wells hereinbefore referred to, and that the remaining seven-eighths should be divided in equal proportions among the surviving children of said decedent, which was done until the death of said widow." "Thereafter, upon the distribution of such royalties, the said Eliza Ferman received as her own two-eighths of the same until the time of her death." We quote from the 10th paragraph: "The agreements referred to . . . relative to the distribution of said oil royalties among the heirs-at-law of the said Alonzo Ferman in the proportions aforesaid." And from the 11th paragraph: "For the period beginning on June 1, 1922, and ending on Jan. 31, 1923, the said J. H. Ferman, . . . as attorney-in-fact as aforesaid, has collected and received from the National Transit Company and Wilburine Pipe Lines, as and for royalties for oil due the heirs-at-law of the said Alonzo Ferman, the aggregate sum of $1075.56."

The effect of all this demonstrates that the leases were intended to work a severance and removal of the oil from the land, and that they worked a legal conversion of the status of the oil, as land, into personal property, so far as the heirs of Alonzo Ferman were concerned. They ceased to own it as land, and, in lieu, became entitled to receive for it royalties of money, or possibly of severed and produced oil; in either event, that which was personalty. As a matter of fact, they appear always to have been paid in money. We are of opinion that even if the lessees were to deliver them a portion or share of the oil produced as royalty, instead of paying a money royalty, it would make no difference. The oil thus delivered would be personalty.

The lessors had nothing further to do with the oil in the land, but were owners of the personal contracts of the lessees, to whom they were to look for what was their due. And the right to be paid in money or oil, or both, would not be land, but a personal right transferable as such, and as personal property.

We are, therefore, of opinion that Susannah Ferman, as owner of a one-eighth interest in the royalties to be received under the leases, had a right to transfer it, as she did, to her invalid daughter, Eliza Ferman; that the latter had a right to bequeath it, as she did, along with her original one-eighth, and that plaintiff is entitled to judgment for $245.58. It seems strange that the

right of Eliza Ferman should be questioned after an acquiescence in, recognition of, and her unquestioned claim to possession and enjoyment of it for more than twenty-six years.

And now, Jan. 18, 1924, after hearing and due consideration, in accordance with the terms of the case stated and opinion of the court thereon, judgment is entered in favor of the plaintiff and against the defendant for the sum of $245.58 and costs.